# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| COGNETX, INC., <br>            Plaintiff, <br> v. <br><br> ROBERT HAUGHTON, a/k/a ROBERT HOUGHTON, and BUSINESSONE TECHNOLOGIES, INC., <br>            Defendants. | CIVIL NO. 10-2293 |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                      **August 26, 2010**

On May 17, 2010, Defendants Robert Houghton[1] and BusinessOne Technologies, Inc. ("Defendants") removed the instant matter from the Court of Common Pleas of Bucks County to this Court, alleging that Plaintiff CognetX, Inc. ("Plaintiff" or "CognetX") had "artfully plead" a copyright action as state law claims in order to avoid federal jurisdiction. Before the Court is Plaintiff's Expedited Motion to Remand,[2] asserting that because Plaintiff does not have a registered copyright, it could not have brought the action in federal court, and thus removal was improper. Plaintiff's Motion is now ripe for disposition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff CognetX is a business that provides "healthcare research, analysis, and consulting" and "information regarding reimbursements and formularies" to clients such as

---

[1] On the docket, the first listed Defendant is "ROBERT HAUGHTON also known as ROBERT HOUGHTON." Defendants' filings refer to this individual as "Robert Houghton." The Court will accordingly adopt that spelling for purposes of this Opinion.

[2] Pl.'s Br. in Supp. of Pl. CognetX, Inc.'s Expedited Mot. to Remand (Doc. No. 7) ("Pl's Br.").

pharmaceutical manufacturers.[3] From August 15, 2000 until his termination on April 13, 2010, Defendant Houghton ("Houghton") served as President, Secretary, and Treasurer of CognetX.[4] CognetX asserts that under the employment agreement entered into by CognetX and Houghton, Houghton could not compete, solicit employees, or disclose CognetX information.[5]

In the early 2000's, CognetX developed a project named "MCHMaestro," which was designed to "expand[] [CognetX's] database to allow its customers to access the information that CognetX provided via a software interactive interface."[6] CognetX expected MCHMaestro to be a "major revenue driver" in 2005.[7] MCHMaestro was later renamed "Symphony," allegedly at Houghton's request.[8] During 2005, however, CognetX's business began to deteriorate significantly. Frederick Howe, the majority shareholder of CognetX, began to suspect that the source of CognetX's business troubles was BusinessOne Technologies, Inc. ("BOT"), a company to which CognetX had outsourced IT functions. At that time, BOT was developing a product named "Maestro" that had "striking similar appearance and functionality" to Symphony.[9] CognetX's ensuing investigation into the actions of BOT led to the conclusion that both BOT and Houghton were engaged in

---

[3] Compl. ¶ 5 (Doc. No. 7 Ex. A).

[4] Id. ¶ 9.

[5] Id. ¶ 10. Defendants allege that the employment agreement introduced in state court was unauthenticated and false. Defs.' Joint Br. in Opp'n to Pl.'s Mot. to Remand at 2 (Doc. No. 17) ("Defs.' Br.").

[6] Compl. ¶ 11.

[7] Id. ¶¶ 12-13.

[8] Id. ¶ 13.

[9] Id. ¶¶ 14-16. According to the Complaint, in 2005, BOT was a corporation based in Durham, North Carolina and owned by Sudhakar Raju. Id.

malfeasance.[10]

CognetX alleges in its Complaint that it learned that Houghton had acquired BOT and became its majority stakeholder in 2003 or 2004.[11] Sometime between 2004 and 2010, CognetX avers that Houghton served in several BOT leadership positions, including Secretary, Treasurer, Director, and Chairman.[12] CognetX asserts that it discovered numerous breaches of fiduciary duty and misappropriation of its assets during its investigation of Defendant Houghton and BOT: First, Houghton allegedly misrepresented to CognetX employees that he was the sole owner and director of Cognetx.[13] Second, CognetX contends that because "the businesses of CognetX and BOT overlap,"[14] Houghton had a duty to disclose that he acquired an ownership interest in BOT when CognetX and BOT began their business relationship.[15] Houghton allegedly diverted assets to BOT soon after he acquired the company, and commingled the staffs of both entities to the detriment of CognetX.[16] In the "Misappropriation of Customers, Trade Secrets and Products" section of its Complaint, CognetX refers to malfeasance regarding the development of Maestro, BOT's product that resembles Symphony.[17] CognetX also accuses BOT of stealing and using its computers and servers, and further asserts that a former CognetX employee, now a BOT employee, is the only

---

[10] Id. ¶¶ 18, 24-48.

[11] Id. ¶¶ 19-20.

[12] Id. ¶¶ 20-21.

[13] Id. ¶¶ 24-26.

[14] Id. ¶ 28. Plaintiff titles this claim, "Misappropriation of the Opportunity to Acquire BOT."

[15] Id. ¶¶ 27-29.

[16] Id. ¶¶ 30-35.

[17] Id. ¶¶ 36-37.

employee who was authorized with the administrative rights to access CognetX servers, email system and websites.[18] Finally, CognetX alleges that in mid-March of 2010, Houghton met with CognetX employees to discuss a "reorganization" of BOT, which involved the transfer of CognetX employees onto BOT's payroll, among other changes.[19]

On April 13, 2010, Frederick Howe intervened to elect a new Board of Directors for CognetX.[20] A new Chief Executive Officer was also elected, and Houghton was thereafter placed on leave and thereafter terminated.[21]

Defendants answer that Houghton was abruptly and unfairly ambushed on April 13th, when CognetX removed him from his position.[22] They further allege that, as Houghton was preparing to assert his rights and request a Temporary Restraining Order ("TRO") against CognetX as a result of that termination, CognetX initiated the instant action.[23] On April 19, 2010, CognetX filed the underlying Complaint, a Petition for a TRO, and a Petition for Preliminary Injunction in the Bucks County Court of Common Pleas. One day later, in the same court, Houghton filed a complaint against CognetX and its officers, directors, and majority shareholder. Defendants also pursued an emergency TRO directing CognetX to cease its alleged surveillance of Houghton, "his elderly mother, and their neighbors."[24] The Bucks County Court of Common Pleas held a

---

[18] Id. ¶¶ 38-42.

[19] Id. ¶¶ 43-48.

[20] Id. ¶ 22.

[21] Id. ¶ 23.

[22] Defs.' Br. at 2.

[23] Id.

[24] Id. at 3.

4

preliminary conference on April 22, 2010, wherein the parties agreed to meet and confer regarding an expedited discovery schedule; the court then scheduled an injunction hearing for June 2, 2010.[25] The following day, the court conducted a telephone conference with the parties and *sua sponte* scheduled an evidentiary hearing on CognetX's Petition for a TRO on April 27th and 28th.[26] In advance of the hearing, Defendants made discovery requests, to which Plaintiff responded.[27]

The April 27th hearing was terminated when Defendants' counsel requested additional time to retain independent counsel for BOT.[28] Thereafter, on May 3rd, the parties entered into a stipulated order removing Houghton from his position at BOT and appointing an independent accountant as a temporary receiver over BOT.[29] The parties then engaged in pre-hearing discovery: Houghton served interrogatories and document requests on CognetX, and CognetX served deposition notices on Houghton and BOT President James Barone and Chief Financial Officer Richard Kane.[30] On May 17, 2010, Defendants filed a Joint Notice of Removal; at that point, it appears that efforts to conduct discovery halted.

CognetX's Complaint contains twelve (12) counts connected to Defendants' alleged theft of its assets, customers, and employees: breach of fiduciary duty, concerted tortious conduct, usurpation of corporate opportunities, fraud/misrepresentation, breach of contract, breach of covenant of good faith and fair dealing, misappropriation of trade secrets, conversion, unfair

---

[25] Id.

[26] Id.; Pl.'s Br. at 4.

[27] Pl.'s Br. at 4.

[28] Id.; Defs.' Br. at 3.

[29] Id.

[30] Id.

5

competition, unjust enrichment, accounting, and appointment of receiver.[31] Defendants argue in their Notice of Removal that four counts pled as state claims (conversion, misappropriation of trade secret, unjust enrichment, and unfair competition) are preempted by the Copyright Act,[32] alleging that "[t]he crux of CognetX's Complaint is the claim that Houghton and BOT improperly transferred, distributed and used a computer program marketed by BOT as 'Maestro.'"[33] Plaintiff maintains that its state claims are well-plead and do not implicate federal jurisdiction.

## II. DISCUSSION

*A. Copyright registration under § 411(a)*

Removal from state court is governed by 28 U.S.C. §§ 1441 and 1446. Section 1441 provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . ."[34] After removal, a plaintiff may file a motion to remand based on either "any defect" or lack of subject matter jurisdiction.[35] Plaintiff's instant Motion contends that, because Plaintiff does not own a registered copyright, this Court must remand as it "lacks subject matter jurisdiction over this case."[36] Removing Defendants respond, however, that the recent United States Supreme Court

---

[31] See Compl. ¶¶ 49-125.

[32] 17 U.S.C. §§ 1 *et seq*.

[33] Defs.' Br. at 2.

[34] 28 U.S.C. § 1441 (2002).

[35] 28 U.S.C. § 1447(c) (1996).

[36] Pl's Br. at 8.

6

decision Reed Elsevier v. Muchnick[37] rejected the view held previously in this Circuit,[38] explaining that lack of registration under § 411(a) of the Copyright Act[39] does not defeat federal jurisdiction; rather, § 411(a)'s registration requirement is a precondition to filing a federal copyright action.[40] In Reed Elsevier, the Supreme Court stressed "the distinction between jurisdictional conditions and claim-processing rules," and concluded that the § 411(a) registration requirement falls within the latter category.[41] On that basis, it reversed and remanded a Second Circuit decision which held that a district court did not have jurisdiction to approve a settlement agreement in which "unregistered copyright holders" received an award for copyright violations.[42] The Supreme Court, however, did not answer "whether § 411(a)'s registration requirement is a mandatory precondition to suit that . . . district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works."[43]

    Here, the Court encounters a case with substantially different factual and procedural

---

[37] 130 S. Ct. 1237 (2010).

[38] See Raquel v. Educ. Mgmt. Corp., 196 F.3d 171 (3d Cir. 1999) (affirming a district court's dismissal of a copyright infringement action for lack of subject matter jurisdiction based on plaintiff's failure to show registration pursuant to § 411(a)).

[39] 17 U.S.C. § 411(a) (2008).

[40] Reed Elsevier, 130 S. Ct. at 1247.

[41] Id. at 1243-48. The Supreme Court noted that § 411(a) allows a federal court to adjudicate infringement claims involving unregistered works in several situations: "where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused. Separately, § 411(c) permits courts to adjudicate infringement actions over certain kinds of unregistered works where the author 'declare[s] an intention to secure copyright in the work' and 'makes registration for the work, if required by subsection (a), within three months after [the work's] first transmission.'" Id. at 1246 (internal citations omitted). These exceptions support a conclusion that § 411(a) is not jurisdictional. Id.

[42] Id. at 1249.

[43] Id. at 1248.

7

circumstances from those in Reed Elsevier, but one that implicates both § 411(a) registration and the breadth of preemption under the Copyright Act. Plaintiff maintains that it never attempted to register a copyright for its Symphony computer software program, and thus filed its legitimate state claims with no desire to recover under the Copyright Act. Defendants assert that regardless of whether Plaintiff has a registered copyright, Plaintiff's claims intersect and overlap with those protections enumerated in the Copyright Act, and thus this Court must assert federal jurisdiction.

Generally, a plaintiff cannot file a federal copyright action without registering a copyright.[44] Plaintiff maintains that because it could not have filed the case in federal court due to the § 411(a) registration precondition, this Court lacks original jurisdiction, and thus removal is improper. The Court recognizes that this is a novel, complex question. Without a registered copyright, Plaintiff cannot meet the § 411(a) precondition for filing a federal Copyright Act action; therefore, its argument that this is not a civil action over which this Court has original jurisdiction is not without merit. Indeed, the Supreme Court left open the question whether a district court could decline to hear the case on non-jurisdictional grounds, such as construing the lack of copyright registration as a type of procedural defect. On the other hand, the decision in Reed Elsevier informs district courts that the subject matter of copyright may be addressed in a federal forum despite lack of registration. As the Court finds that Reed Elsevier neither mandates nor prohibits remand in this matter, we must next examine whether Plaintiff's claims fall within the subject matter of copyright.

*B. Subject matter of copyright*

In the underlying Complaint, CognetX alleges that Houghton, while President of

---

[44] 17 U.S.C. § 411(a).

CognetX, "divert[ed] assets, employees, customers and value" to BOT.[45] The Symphony computer program was one asset that Plaintiff alleges was taken and is now marketed as BOT's primary product, Maestro.[46] Defendants assert, in their Notice of Removal[47] and in their opposition to Plaintiff's instant Motion to Remand,[48] that four of Plaintiff's state law claims related to Maestro are preempted by the Copyright Act: conversion; theft of trade secrets; unjust enrichment; and unfair competition.

The Court must then examine the claims in the suit to determine whether there is federal jurisdiction, essentially, whether Plaintiff's state law claims are within the subject matter of the Copyright Act. Removal is proper where a plaintiff's state law claims are preempted by federal law.[49] Here, Defendants allege that the Copyright Act preempts several of Plaintiff's claims. The Copyright Act contains an express preemption provision in § 301(a), which states, in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.[50]

Furthermore, 28 U.S.C. § 1338(a) states that "district courts shall have original jurisdiction of any

---

[45] Pl.'s Compl. in Equity ¶ 15 (Doc. No. 7 Ex. A).

[46] Id. ¶ 37.

[47] Doc. No. 1.

[48] Doc. No. 17.

[49] See, e.g., MCS Servs. v. Johnsen, 2002 U.S. Dist. LEXIS 16910 (E.D. Pa. Aug. 13, 2002).

[50] 17 U.S.C. § 301(a) (1998).

9

civil action arising under any Act of Congress relating to . . . copyrights . . . . Such jurisdiction shall be exclusive of the courts of the states in . . . copyright cases."[51] The exclusive rights granted by the Copyright Act are reproduction; preparation of derivative works; distribution by sale, rental, lease or lending; public performance, in the case of motion pictures or audiovisual works; and public display of individual images from motion pictures or audiovisual works.[52]

Plaintiff's Complaint does not assert "equivalent right[s]" to those protected by the Copyright Act. The Court need not decide whether Plaintiff *could* recover under copyright law for Defendants' alleged actions regarding Symphony and Maestro, because at issue in this matter are separate and distinct causes of action. Plaintiff did not seek to invoke the protection of the Copyright Act, and it has asserted an appropriate trade secret claim (along with eleven other claims) on which it seeks to recover, at least in part, for the alleged theft of its computer software program, Symphony. Put differently, the Court does not find that Plaintiff's Complaint is "artfully plead" to avoid the subject matter of copyright. Despite the possibility of preemption in specific circumstances,[53] misappropriation of trade secrets and copyright claims can be separate avenues for relief,[54] and Plaintiff chose to pursue the former and not the latter.

In order for a state common law or statutory claim to be preempted by the Copyright Act, a defendant must show that the state law seeks to enforce rights that are equivalent to the

---

[51] 28 U.S.C. § 1338(a) (1999).

[52] 17 U.S.C. § 106 (2002).

[53] See, e.g., Information Handling Servs. v. LRP Publs., Inc., 2000 U.S. Dist. LEXIS 5187 (E.D. Pa. Apr. 18, 2000) (holding that plaintiff's claims were preempted because otherwise they would serve to expand copyright protection to information that is not copyrightable in the first instance).

[54] See, e.g., Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc., 307 F.3d 197 (3d Cir. 2002).

10

exclusive rights of copyright.[55] Here, the Third Circuit case of <u>Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.</u> offers guidance to the Court: "A state law misappropriation of trade secrets claim that requires a proof of breach of duty of trust or confidence to the plaintiff through the improper disclosure of confidential materials is qualitatively different because it is not an element of copyright infringement."[56] If the state claim has an additional element, the rights are not equivalent, and there is no preemption.[57] Plaintiff's state misappropriation of trade secret claim (notably, the only claim said to be removable by Defendants that expressly references the copyrightable software at issue, "MCHMaestro," in the Complaint[58]) involves Defendant Houghton's alleged breaches of his duties to CognetX, duties unrelated to copyright law. The same analysis applies to the other three state claims alleged to be removable: conversion, unfair competition, and unjust enrichment.[59] In relation to all four claims, Plaintiff requests comprehensive relief related to all of Houghton's alleged diversion of assets, customers, and employees. The rights asserted by Plaintiff are not equivalent to rights in copyright, and thus preemption does not apply. Federal jurisdiction is therefore wanting, under the Copyright Act or any other federal statute, to justify the

---

[55] <u>Dun & Bradstreet</u>, 307 F.3d at 216-217.

[56] <u>Id.</u> at 218.

[57] This is commonly called the "extra element" test. See <u>TEGG Corp. v. Beckstrom Electric Co.</u>, 650 F. Supp. 2d 413, 421 (W.D. Pa. 2008) (citing <u>Dun & Bradstreet</u>, 307 F.3d at 217).

[58] Compl. ¶ 97.

[59] Defendants cite the Eastern District of Pennsylvania case of <u>Giordano v. Claudio</u> for the proposition that the subject matter of copyright is broader than the Copyright Act's enumerated protections. 2010 U.S. Dist. LEXIS 48148 (E.D. Pa. May 14, 2010). In <u>Giordano</u>, plaintiff filed a ten-count complaint in federal court alleging various claims related to a dispute over authorship credit for an academic article. <u>Id.</u> at *1-8. The Court held that the unjust enrichment claim was preempted by the Copyright Act because the allegations stemmed from a type of harm that copyright law is designed to protect. <u>Id.</u> at *54. The instant case is clearly distinguishable, as the allegations cover a broad range of corporate malfeasance, not the impact of one copyrightable academic article. In addition, the plaintiff in <u>Giordano</u> had already chosen a federal forum.

exercise of our jurisdiction or to hear the merits of the instant case.

The existence of 17 U.S.C. § 411(a) provides support for our holding; none of the exceptions to registration[60] concern a like situation, where there is no claim that Plaintiff had any *intent* to procure copyright registration. Certainly, a court may consider lack of registration as substantive factual evidence regarding plaintiff's intent in crafting its complaint. Defendants want this Court to conclude that after Reed Elsevier, registration does not have any effect on the assertion of federal jurisdiction, that its status as a "mandatory precondition" no longer has teeth. In doing so, they ignore lack of registration as *evidence* of a plaintiff's intent; that is, whether a plaintiff has "artfully plead" to avoid copyright law, or whether it has separate and legitimate state claims. The effect of a holding that registration is now irrelevant to a federal forum's consideration of copyright issues would virtually eliminate state trade secret law and any and all state claims relating to potentially copyrightable material. A plaintiff would be forced to choose a federal forum whenever he or she brought state claims that touched on any of the potential enumerated Copyright Act protections, whether or not the plaintiff had sought or failed to seek a registered copyright. The Court neither finds that to be Congress's legislative intent when it crafted Copyright Act protections, nor can it apply the Supreme Court's decision in Reed Elsevier to do so.

*C. Waiver*

Plaintiff asserts a second argument for remand, arguing that Defendants have waived federal jurisdiction by litigating the merits of a temporary restraining order, serving discovery requests on Plaintiff, and seeking the appointment of a receiver over Plaintiff in state court. It is well

---

[60] See supra, note 41.

settled in this Circuit that waiver of the right to remove must be "clear and unequivocal."[61] District courts in our Circuit have found that waiver has not been established when defendants attend and participate in a scheduling conference,[62] file preliminary objections,[63] file a praecipe to file a complaint and a praecipe for judgment of non pros,[64] and file an answer.[65] Courts have held that defendants have not waived their right to remove if a case is still in the preliminary stages.[66] Where there has been no litigation on the merits and no prejudice to any of the parties, the general rule is that the right to remove is not lost.[67]

The Court finds that Defendants Houghton and BOT did not take any actions seeking an adjudication on the merits of CognetX's claims, and they otherwise did not display any intent, much less "clear and unequivocal," to waive the right to remove to federal court.[68] The parties were unquestionably in the preliminary stages of litigation; they had not received a decision from the state court regarding CognetX's request for temporary injunctive relief, and they had only recently begun

---

[61] Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1218 (3d Cir. 1991).

[62] Allen v. Chi. Steel (PA), LLC, 2010 U.S. Dist. LEXIS 75415, at *17 n.8 (E.D. Pa. July 27, 2010).

[63] Saccomandi v. Delta Airlines Inc., 2008 U.S. Dist. LEXIS 55579, at *9 (E.D. Pa. July 22, 2008).

[64] Selvaggi v. Prudential Property & Casualty Ins. Co., 871 F. Supp. 815, 817-18 (E.D. Pa. 1995).

[65] Januszka v. Kemper Ins. Co., 1994 U.S. Dist. LEXIS 7194, at *11 (E.D. Pa. May 26, 1994).

[66] See Mancari v. A C & S Co., 683 F. Supp. 91, 94-95 (D. Del. 1988) (holding that a defendant in "an advanced stage of trial" had manifested an intent to litigate in state court and thus waived his right to remove),

[67] See Selvaggi, 871 F. Supp. at 818 (internal citations omitted).

[68] The fact that Defendants filed a separate civil action against CognetX in state court also does not weigh in favor of waiver. See, e.g., Horse v. Carneal, 1995 U.S. Dist. LEXIS 3835 (E.D. Pa. Mar. 20, 1995) (ruling that defendant did not waive the right to removal by filing an initial action against plaintiff in state court and then arguing for dismissal of plaintiff's state complaint in another county); see also Rose v. Giamatti, 721 F. Supp. 906, 923 (S.D. Ohio 1989) (finding that defendants did not waive by participating in state court proceedings such as defending against a request for preliminary injunctive relief, taking discovery, and requesting an evidentiary hearing).

discovery. Thus, Defendants did not waive their right to remove.

As stated above, the Court finds that Plaintiff's claims are not preempted by the Copyright Act, and Plaintiff's Motion to Remand shall be granted. An appropriate Order follows.